# IN THE SUPREME COURT OF TEXAS

═══════════════
No. 14-0638
═══════════════


PRESTON A. OCHSNER, PETITIONER,

v.

VICTORIA V. OCHSNER, RESPONDENT

═══════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════════════


JUSTICE GUZMAN, joined by JUSTICE LEHRMANN, concurring.


The Court, applying a proper construction of the statute and an appropriate standard of review, holds admissible evidence supports the trial court's conclusion that Preston Ochsner discharged his child-support obligation. I fully concur with the Court's analysis and reasoning. I write separately only to emphasize that (1) the trial court had discretion to accept proof of Preston's direct payments under section 157.162(c-1) of the Family Code, (2) the result in this unexceptionally unique case is amply supported by the record evidence, and (3) obligors who fail to discharge their child-support obligations by the court-ordered method do so at their own peril.

Unlike *Office of Attorney General of Texas v. Scholer*[1] and the child-support-enforcement defenses discussed in section 157.008, this case is not about excusing nonpayment or crediting an

---

[1] 403 S.W.3d 859 (Tex. 2013).

overpayment, both of which implicate a modification of the amount of child-support arrearages.[2] The issue is the trial court's authority to count support payments not made through the registry in determining whether and to what extent an arrearage exists. JUSTICE BOYD would hold direct payments can never discharge a support obligation if the support order requires payment to a registry,[3] as it must always do.[4] But JUSTICE BOYD's position cannot be squared with the language in chapter 157 of the Family Code, which recognizes that direct payments are not uncommon[5] and the trial court may consider them in determining whether an arrearage exists.[6] For purposes of determining the existence and amount of arrearages, chapter 157 permits, but does not require, trial courts to count direct payments. Whether the evidence establishes a direct payment or not is a different question, which the trial court must determine based on the evidence presented and the context of each particular case, including the language in the child-support order. This case may be "messy"[7] and "enshrouded in family law trappings,"[8] as JUSTICE BOYD and JUSTICE JOHNSON lament,

---

[2] TEX. FAM. CODE §§ 157.008, .263(b)(1).

[3] *Post* at 11 (BOYD, J., dissenting).

[4] TEX. FAM. CODE § 154.004(a) ("The court shall order the payment of child support to the state disbursement unit as provided by Chapter 234.").

[5] Direct payments are of such common practice that the Texas Attorney General provides an "Affidavit of Direct Payments" by which the non-custodial parent can document child and medical support payments "made directly to the custodial parent (in any form)." *See* https://texasattorneygeneral.gov/files/cs/1A007ne.pdf (last visited June 23, 2016). A similar form for the same purposes is available to the custodial parent. https://texasattorneygeneral.gov/files/cs/1A007ce.pdf (last visited June 23, 2016). Excluded from the form are any payments made through a county registry or the state disbursement unit.

[6] TEX. FAM. CODE §§ 157.162(c), (c-1), .266(a)(2), (b).

[7] *Post* at 1-2 (BOYD, J., dissenting).

[8] *Post* at 1 (JOHNSON, J., dissenting).

but not unusually so.  Though all child-support disputes ultimately turn on their own peculiar facts, the outcome in this case derives from the application of the statute as written, according meaning to each word chosen by the Legislature and significance to the words the Legislature purposefully omitted.[9]

Under section 157.162(c) of the Family Code, a copy of "a payment record" is admissible to show whether payments were made.[10]  The statute does not define or delimit the term "a payment record,"[11] and subsection (c-1) expressly permits the respondent to offer evidence controverting a payment record offered as proof of an arrearage.[12]  Subsections (c) and (c-1) are rules of admissibility that authorize the trial court to accept evidence bearing on payment history as necessary to confirm

---

[9] *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen.").

[10] TEX. FAM. CODE § 157.162(c).

[11] *Compare id.* § 157.002(b)(3) (permitting movant to attach "a record of child support payments maintained by the Title IV-D registry or a local registry"), *with id.* § 157.162(c) ("[t]he movant may attach to the motion a copy of a payment record" and "a payment record" attached "as authorized by [the] subsection . . . is admissible"); *cf. also id.* §§ 101.018(4) (defining local registry as maintaining "official child support payment records"), 234.001(d) ("A certified child support payment record produced by the state disbursement unit is admissible as evidence of the truth of the information contained in the record and does not require further authentication or verification."), 234.009 (defining an "official record of a payment"), 234.0091 (governing disputes about discrepancies between "the record of child support payments maintained by the [state disbursement] unit" and "the payment records maintained by the obligor or obligee"). The legislative history accompanying the 2011 amendment rewriting and dividing former section 157.162(c) into current subsections (c) and (c-1) further affirms that "a payment record" was not intended to be limited to an official registry record of payment. *Compare* Senate Comm. on Jurisprudence, Bill Analysis, Tex. H.B. 1674, 82d Leg., R.S. (Apr. 15, 2011) (engrossed) (proposed amendment of 157.162(c) limited "a payment record" to those records maintained by the state disbursement unit or a local registry), *with* Senate Comm. on Jurisprudence, Bill Analysis, Tex. H.B. 1674 82d Leg., R.S. (Apr. 27, 2011) (enrolled) (discussing the amendment as it was subsequently enacted and presently appears in the statute).

[12] *See* TEX. FAM. CODE § 157.162(c-1).

3

the amount of child-support arrearages.[13] Subsections (c) and (c-1) imbue the trial court with the authority to consider evidence of payment, as distinguished from a counterclaim or an offset claim.[14] The trial court's decision to admit or exclude evidence bearing on payment is reviewed for abuse of discretion,[15] so there is no guarantee—as the decree in this case plainly stated—that the trial court will allow evidence of payment other than in the method set out in the child-support order.[16]

While the amount of child support cannot be reduced without a modification of the child-support order,[17] crediting evidence that child support was paid directly to the obligee, rather than through a registry, is not a modification of the amount of child support owed so long as the trial court's child-support payment calculations do not operate to reduce the obligation and are based on the evidence presented rather than "the trial court's assessment of what is fair or reasonable."[18] A trial court does not abuse its discretion "if it bases its decision on conflicting evidence and some

---

[13] *See id.* § 157.263 (requiring trial court to confirm the amount of arrearages and render one cumulative money judgment, if the movant requests a money judgment).

[14] For example, section 157.008 authorizes a counterclaim or offset against a period of nonpayment if actual support was furnished during a period of voluntary relinquishment, which is distinct from allowing proof of actual payment to controvert a claim of nonpayment. *See id.* § 157.008.

[15] *See In re A.S.G.*, 345 S.W.3d 443, 449 (Tex. App.—San Antonio 2011, no pet.); *In re R.J.P.*, 179 S.W.3d 181, 184 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("Questions concerning the admission and exclusion of evidence are reviewed under an abuse of discretion standard."); *see also Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

[16] The decree admonishes: "Failure of a party to make child support payments to the place and in the manner required by a Court Order may result in the party not receiving credit for making the payment."

[17] *See* TEX. FAM. CODE § 157.263(b-1); *see also Chenault v. Banks*, 296 S.W.3d 186, 189-90 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Although the enforcement action was filed prior to the effective date of section 157.262(b-1), the applicable version of the statute is not materially different. Accordingly, I cite the current version of the statute for convenience.

[18] *In re A.L.S.*, 338 S.W.3d 59, 66 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

evidence supports its decision."[19] "A trial court does, however, abuse its discretion when its decision is contrary to the only permissible view of the evidence."[20] Here, Victoria Ochsner submitted the child-support registry's payment record to establish an arrearage. As permitted by section 157.162(c-1), Preston presented controverting evidence that he discharged his child-support obligations via direct payments to Victoria's designee. The trial court's determination that Preston satisfied his child-support obligation is supported by a permissible view of the evidence.[21] Accordingly, the trial court acted within its discretion in reconciling the evidence and weighing the credibility of the witnesses.

In determining the existence of an arrearage and calculation of interest, the issue is whether the obligor discharged his obligation to pay the amount of child support ordered, which requires a comparison of the "amount owed as provided in the order" with "the amount paid."[22] Proof of actual payment is germane to confirmation of an arrearage, while the issue JUSTICE BOYD

---

[19] *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998); *see In re A.L.S.*, 338 S.W.3d at 66 (evaluating conflicting child-support-payment evidence and finding no abuse of discretion where some evidence supported the amount of confirmed arrearages).

[20] *In re Barber*, 982 S.W.2d at 366.

[21] The evidence is adequately detailed in the Court's opinion; accordingly, in the interest of brevity, I do not repeat it here.

[22] *See* TEX. FAM. CODE § 157.002(b)(1) (required contents of the motion for enforcement). The manner and timeliness of payment may affect the calculation of interest, but do not alter the fact of payment. *See* TEX. FAM. CODE §§ 154.003 (describing "manner of payment" the court may order as any combination of periodic payments, lump-sum payment, an annuity purchase, and setting aside of property), 157.266 (if payments are not made through a registry, a child-support payment is delinquent for interest-accrual purposes if not received by the obligee within 31 days of the date stated in the order).

identifies—global satisfaction of the order's requirements—implicates the penalty of contempt.[23]

The distinction between the two is evident when comparing the language employed in the pertinent

enforcement statutes:

- "[a] motion for enforcement of child support . . . must include the *amount owed* as provided in the order, the *amount paid*, and the *amount of arrearages*";[24]

- "if contempt is requested, [the motion for enforcement] must include the *portion of the order allegedly violated*";[25]

- "[t]he court retains jurisdiction to render a contempt order *for failure to comply with the child support order*" if enforcement is timely requested;[26]

- "[t]he court retains jurisdiction *to confirm the total amount of child support arrearages* and render a cumulative money judgment" if enforcement is timely requested;[27]

- "the court shall confirm *the amount of arrearages* and render one cumulative money judgment";[28]

- "[a] cumulative money judgment includes . . . *unpaid child support*";[29] and

---

[23] *Post* at 7 (BOYD, J., dissenting) ("[A] court hearing a motion to enforce a child-support order must measure the obligor's performance against the order's requirements . . . .").

[24] TEX. FAM. CODE § 157.002(b)(1) (emphases added).

[25] *Id.* § 157.002(b)(2) (emphasis added).

[26] *Id.* § 157.005(a) (emphasis added).

[27] *Id.* § 157.005(b) (emphasis added).

[28] *Id.* § 157.263(a) (emphasis added).

[29] *Id.* § 157.263(b)(1) (emphasis added).

6

- "the court may not reduce or modify *the amount of child support arrearages.*"[30]

Furthermore, even though "[t]he court shall order the payment of child support to the state disbursement unit as provided by Chapter 234,"[31] a payment is not delinquent even "if payments are not made through a registry" so long as the payment is timely received by "the obligee or entity specified in the order."[32]

Consideration of all the statute's provisions requires that words not be isolated from the broader context. JUSTICE BOYD's analysis fails to afford meaning to words specifically identifying the portion of the support order at issue in determining the amount of arrearages.[33] The notion that a court is statutorily prohibited from considering direct payments to the obligee in satisfaction of the support obligation is simply unsupported by the plain language of the governing statutes and at odds with the custom and practice in our child-support system.[34]

As a final thought, I write to underscore that parents promote the best interests of their children by fulfilling their child-support obligations and making payments in precise conformity with the decree to minimize disputes and costly court battles. Nevertheless, I recognize that, like this case, situations exist where parents agree to accept direct payments, and in those instances, the trial

---

[30] *Id.* § 157.263(b-1) (emphasis added).

[31] *Id.* § 154.004(a).

[32] *Id.* § 157.266(a)(2).

[33] *Post* at 2-3, 12 n.5 (BOYD, J., dissenting) (relying on statutory references to child-support amounts "provided in the order" and "previously ordered" and the trial court's discretion under Family Code section 154.001 to prescribe "the manner" of support parents must provide).

[34] *See supra* note 5.

court has discretion to weigh evidence in determining the amount of child support that has been paid and whether a child-support obligation has been fulfilled.  With these points of clarification, I join the Court's opinion and judgment.

_____
Eva M. Guzman
Justice

**Opinion delivered:** June 24, 2016